ORIGINAL

# UNITED STATES DISTRICT COURT
for the
District of Arizona

SEALED

United States of America )
v. )
Jeffery Harbin )  Case No. 11-3043 M
(DOB: /82) )
*Defendants* )

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

**See Attachment A: Count 1.**

I further state that I am a Special Agent for the Federal Bureau of Investigation, United States Department of Justice, and that this complaint is based on the following facts:

**See Attachment B: Statement of Probable Cause Incorporated By Reference Herein**

AUTHORIZED BY: AUSA Josh Parecki

☒ Continued on the attached sheet.

*Complainant's signature*

Scott McKee, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Jan. 15, 2011

*Judge's signature*

City and state: Phoenix, Arizona

Lawrence O. Anderson
*Printed name and title*

## ATTACHMENT A:  COUNT 1

**COUNT 1:**

On or about January 13, 2011, in the District of Arizona, defendant, JEFFERY HARBIN possessed destructive devises which were not registered to him in the National Firearms Registration and Transfer Record in violation of Title 26, United States Code, Section 5861(d).

All in violation of Title 26, United States Code, Section 5861(d).

## ATTACHMENT B: STATEMENT OF PROBABLE CAUSE

I, Special Agent Scott McKee, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and am currently assigned to the FBI Joint Terrorism Task Force (JTTF). I have been employed as an FBI SA for more than 12 years. During my career with the FBI, I have investigated numerous criminal cases involving the unauthorized possession and use of explosives and improvised explosive devices as they relate to violations of federal law. I have also received specialized training as a Special Agent Bomb Technician (SABT). My experience as an FBI Agent and SABT includes the investigation of cases involving the use of explosives, improvised explosive devices, and weapons of mass destruction.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

3. The following investigation involves violations of Title 26, United States Code, Section 5861(d), Possession of Destructive Devises Which Are Not Registered To Him In The National Firearms Registration and Transfer Record by JEFFERY HARBIN.

2

## BACKGROUND AND PROBABLE CAUSE

4.  JEFFERY HARBIN is a member of the white supremacist group, National Socialist Movement (NSM). This investigation of HARBIN involves the use of a FBI Confidential Human Source (CHS) who has provided truthful and corroborated information on more than ten occasions all with no known discrepancies in his/her reporting.

5.  On 11/14/2010, the CHS advised that he/she had a conversation with HARBIN's girlfriend, HEATHER HARNER ("HARNER") on 11/12/2010. HARNER advised the CHS that she was concerned about the activities of her boyfriend, JEFFERY HARBIN. Specifically, HARNER stated that at their previous residence, HARBIN had manufactured approximately 6 gallons of homemade (explosive) aluminum powder using aluminum foil. HARNER further explained that HARBIN had spent about $200 on model rocket engines to use in conjunction with the aluminum powder. HARNER was not aware of what HARBIN's ultimate intentions were with the aluminum powder.

6.  On 01/06/2011, the CHS contacted HARBIN and invited him over to his/her residence for 01/14/2011. During this telephone conversation, the CHS explained he/she was interested in making "trip" or "smoke" flares for operations along the border and asked HARBIN to assist.

7.  On 01/12/2011, the CHS telephonically confirmed their meeting. On that same date, HARBIN advised the CHS that, in addition to items used to make flares, he was also bringing "PVC" and "black powder" with him.

8. On 01/14/2011, for the purposes of monitoring conversations between the CHS and HARBIN, FBI agents provided the CHS with both a concealable recording device and a transmitting device(s) for the upcoming meeting between CHS and HARBIN at the CHS's residence. Additionally, an FBI surveillance team was set up at the PREMISES of HARBIN. At approximately 12:24pm, FBI surveillance observed HARBIN's vehicle depart the PREMISES and followed him directly to the residence of the CHS. No stops or deviations occurred.

9. Upon arriving at the residence of the CHS, the CHS advised FBI agents that HARBIN brought two "Rubbermaid" type tubs and a black bag into the garage of the CHS directly from his vehicle. Once inside the garage of the CHS, your Affiant was able to overhear HARBIN describe an item inside the bag as a "homemade grenade." HARBIN further advised this device was filled with explosive powder. Your Affiant was also able to overhear HARBIN state that he had made such a device before, and his "homemade grenade" was his "little baby."

10. After departure of HARBIN from the residence of the CHS, the CHS advised your Affiant that HARBIN possessed many components and explosive ingredients in the two "Rubbermaid" bins to include black powder. CHS also advised that HARBIN brought over a "homemade grenade" and a "pipe bomb" complete with end caps and a model rocket engine igniter fusing system.

11. Upon departure from the residence of the CHS, FBI surveillance teams followed HARBIN. No stops or deviations occurred. While headed north, HARBIN was pulled over by the Arizona Department of Public Safety for a traffic-related violation. HARBIN was subsequently placed under arrest at that stop by FBI agents for suspected federal violations related to the possession of an unregistered explosive device. HARBIN agreed to a consent search of his vehicle via a signed consent search form. Upon inventorying HARBIN's vehicle, three improvised explosive devices (IEDs) were observed along with explosive making powders and materials. At this point for safety considerations, the consent search was immediately stopped and the Mesa Police Department Bomb Squad was called to provide "render-safe" assistance.

12. FBI SABT Philip S. Thorlin described the three IEDs as follows: (1) IED #1: a round metal object with a pull pin tied to a fuzing system, olive in color; (2) IED #2: a gray PVC pipe approximately 2 inches in diameter with end caps and two exposed silver wires: (3) IED#3: a copper fitting with a charcoal grey substance which appears to have a pull/friction switch.

13. ATF Special Agent Doug Palmer advised that upon arrest, HARBIN was not in possession of any paperwork which would have authorized possession of these devices under the National Firearms Act. Agent Palmer further advised that if these IEDs were registered devises they would be marked with serial numbers. The aforementioned devises were not marked with any serial numbers or any marking of any kind consistent with National Firearms Act registration requirements.

## **CONCLUSION**

14. For these reasons, this affiant submits that there is probable cause to believe that on or about January 14, 2011, JEFFERY HARBIN did possess destructive devises which were not registered to him in the National Firearms Registration and Transfer Record in violation of Title 26, United States Code, Section 5861(d).

_____
Scott McKee, Special Agent
Federal Bureau of Investigation


Sworn to and subscribed before me
this 15th day of January, 2011.

_____
Hon. Lawrence O. Anderson
United States Magistrate Judge

6